**SIGNED THIS: March 29, 2006**

_____
**LARRY LESSEN
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

```
In Re                          )
                               )   In Bankruptcy
BRADLEY W. HERMES and          )
MONICA L. HERMES,              )   Case No. 05-72249
                               )
         Debtors.              )
_____  )
                               )
WILLIAM D. MOORE,              )
                               )
         Plaintiff,            )
                               )
     v.                        )   Adversary No. 05-7141
                               )
BRADLEY W. HERMES,             )
                               )
         Defendant.            )
```

## O P I N I O N

The issue before the Court is whether a tenant farmer's payment of his cash rent with a NSF check constitutes a

-1-

nondischargeable debt pursuant to 11 U.S.C. § 523(a)(4).

The Debtor, Bradley Hermes, and his family have been farming 700 acres of land owned by the Plaintiff, William Moore, since 1994. The Debtor's father was the original tenant, but the Debtor has been farming it for the last few years. There was a written lease at one point, but over the years it has evolved into an oral lease. The Debtor would plant the crop, harvest it, and sell it. The Bank of Modesto, which had a lien on the crops, would receive the crop proceeds. The cash rent was usually paid at the end of the crop year. The Plaintiff never had a written security agreement, never filed a UCC financing statement, and never asserted a landlord's lien on the crops.

The Debtor farmed the Plaintiff's land in 2002. The cash rent of $72,500 was paid in February of 2003 from the proceeds of a one-month loan from the Bank of Modesto. The Debtor needed the short-term loan from the Bank because he was applying for a five-year FSA operating loan and the FSA loan was not ready.

On February 28, 2003, the Debtor and his wife signed an FSA - guaranteed loan agreement which was to be administered by the Bank of Modesto. The agreement provided for a loan in the maximum amount of $190,000 "as needed for 2003-2007 farm and crop operating expenses". The loan provided that the loan balance had to be reduced to $100 before an advance for a subsequent year could be made.

The Debtor also farmed the same ground in 2003.  The Debtor wrote a check for the rent at the end of December, but it did not clear the Bank until January.  The Debtor did not have sufficient funds in the Bank to cover the check when he wrote it, but an advance on the line of credit covered the check.

The Debtor continued to farm the ground in 2004, and he expected the same process to be followed for the payment of his rent.

In October, 2004, the Debtor harvested his crop.  He received about $190,000 from the grain company.  The grain checks were made out to the Debtor and the Bank of Modesto.  The Bank used the proceeds to pay off two loans of the Debtor that did not mature until February 1, 2005 - one for $11,000 and one for $31,000.  The Bank applied $144,000 to the operating loan.  The operating loan carried a balance of almost $30,000 at the end of 2004.

On December 30, 2004, the Debtor wrote two checks totaling $83,000 payable to the Plaintiff for the 2004 cash rent.  The Debtor expected his line of credit to cover the checks.  However, the checks were presented and dishonored twice.

Although the line of credit had not been revoked, the Bank informed the Debtor that it wanted the loan balance paid down to $100 before more money was advanced.

The Debtor sold some grain in February, 2005, and paid down the loan balance.  He then wrote two more checks to the Plaintiff

for a total of $87,000.  The Debtor added $4,000 to the previous amount for the inconvenience caused by the overdraft.  These checks were presented twice and dishonored twice.

The Debtor then learned from the Bank that he had to reapply for the operating loan.  This was a surprise to the Debtor because he thought his loan was guaranteed through 2007.  The Debtor knew that it was a 45-day process to reapply for the operating loan and that the Plaintiff could not wait that long to lease the farmland.  The Debtor tried to get a short-term bridge loan, but the Bank would not cooperate with him.  The Debtor did not reapply for the operating loan.

The Debtor wrote another series of checks for the cash rent in March, 2005.  The Plaintiff did not present these checks to the Bank because he learned from the Bank that they would not be honored.

The Plaintiff leased the farmland to another individual for the 2005 crop year.

The Debtor filed his petition pursuant to Chapter 7 of the Bankruptcy Code on April 27, 2005.  The Plaintiff was listed in Schedule F as an unsecured creditor holding a claim of $87,000.  The Plaintiff filed a timely complaint to determine the dischargeability of his debt on July 30, 2005.

The Plaintiff alleges that the $87,000 debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(4), which excepts

from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  Count I alleges that the debt is nondischargeable because it is a "debt for fraud or defalcation or both while acting in a fiduciary capacity." Count II alleges that the debt "arose when Defendant unlawfully took from Plaintiff certain crops and or cash proceeds associated with same which belonged to the Plaintiff."

In order to prevail on Count I, the Plaintiff must prove that (1) a fiduciary relationship existed between him and the Debtor, and (2) fraud or defalcation was committed by the Debtor in the course of that relationship.  In re Monroe, 304 B.R. 349 (Bankr. N.D. Ill. 2004).  The issue of whether a debtor is a fiduciary under this section is a question of federal law.  In re Frain, 230 F.3d 1014 (7th Cir. 2000).  The broad, traditional definitions of a fiduciary - as a relationship involving confidence, trust and good faith - is inapplicable in the dischargeability context.  In re Cantrell, 329 F.3d 1119 (9th Cir. 2003).  Instead, for purposes of § 523(a)(4), a fiduciary relationship requires an express or technical trust.  In re Cochrane, 124 F.3d 978 (8th Cir. 1997).  A landlord-tenant relationship is not ordinarily a fiduciary one.  In re Caulfield, 192 B.R. 808, 818 (Bankr. E.D. N.Y. 1996).

The Plaintiff did not introduce any testimony or evidence at trial to establish that the Debtor acted as a fiduciary at the time the debt was incurred.  The evidence established that the Debtor

was simply a tenant on farmland owned by the Plaintiff. Therefore, the Plaintiff's claim of fraud or defalcation while acting in a fiduciary capacity must fail.

A claim for either larceny or embezzlement under § 523(a)(4) does not require a fiduciary relationship with a debtor. Larceny requires a showing that the debtor wrongfully took property with fraudulent intent to convert it to his own use without the owner's consent. Matter of Rose, 934 F.2d 901 (7th Cir. 1991). Embezzlement is defined as the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come. Matter of Weber, 892 F.2d 534 (7th Cir. 1989). In order to prove embezzlement, the creditor must show that the property was rightfully in the possession of a non-owner and that the non-owner appropriated the property to a use other than which it was entrusted. In re Hayden, 248 B.R. 519 (Bankr. N.D. Tex. 2000). In addition, embezzlement requires fraud in fact. U.S. Title Ins. Co. of New York v. Dohm, 19 B.R. 134 (N.D. Ill. 1982). Larceny and embezzlement differ only in the manner in which possession of the funds is acquired. Hayden, *supra*.

Both larceny and embezzlement require that the Debtor take property belonging to the creditor. In re Kelly, 155 B.R. 75 (Bankr. S.D. N.Y. 1993) (creditor alleging larceny must show that the debtor wrongfully took property from its owner); In re Contella, 166 B.R. 26, 30 (Bankr. W.D. N.Y. 1994) (embezzlement

involves the appropriation of property belonging to another person or entity).  In this case, the Plaintiff has failed to show that the Debtor wrongfully took any property which the Plaintiff owned.

The Plaintiff did not own the crops.  The Plaintiff may have been entitled to a landlord's lien on the crops pursuant to 735 ILCS 5/9-316, but the Plaintiff never asserted his landlord's lien. When the crops were sold, the grain check was made out to the Debtor and the Bank of Modesto, the creditor claiming a priority security interest in the crops.  The Bank applied the crop proceeds to the loans the Debtor had with the Bank.  The Debtor did nothing wrong or improper.  There was no evidence that the money from the crops went anywhere but to the Bank of Modesto.

The Plaintiff's entire argument is predicated on 720 ILCS 5/17-1, which provides that a person commits a deceptive practice when with intent to defraud he issues a check knowing that it will not be paid.  Plaintiff's reliance on this statute is "misplaced as no criminal conviction was ever obtained against" the Debtor.  In re Fogel, No.87-90132, Adv. No. 87-9066 (Bankr. C.D. Ill. 1988) (Fines, J.).  Moreover, the Debtor overcame any presumption of fraud with his testimony that he thought the checks would be covered by his line of credit.  Finally, as the Plaintiff elected to proceed under § 523(a)(4), a debt incurred through fraud is only nondischargeable when there is a fiduciary relationship, and the Court has previously determined that there was no fiduciary

-7-

relationship in this case.

For the foregoing reasons, the Plaintiff's Complaint to Determine Dischargeability of Debt is denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###